UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Rita Rae Montgomery,

        Plaintiff,

        v.                                      Civil Action No. 2:16-cv-126

Nancy A. Berryhill, Acting
Commissioner of Social Security,[1]

        Defendant.

## OPINION AND ORDER
(Docs. 10, 18)

      Plaintiff Rita Rae Montgomery brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB). Pending before the Court are Montgomery's motion to reverse the Commissioner's decision (Doc. 10), and the Commissioner's motion to affirm the same (Doc. 18). For the reasons stated below, Montgomery's motion is GRANTED, the Commissioner's motion is DENIED, and the matter is REMANDED for further proceedings and a new decision.

---

[1] The Court has amended the caption to reflect the current Acting Commissioner of Social Security, who assumed office on January 20, 2017. *See* Fed. R. Civ. P. 25(d).

## Background

Montgomery was 43 years old on her alleged disability onset date of January 1, 2011. She is married and has two adult children. (AR 290.) She has a high school education (AR 36, 214), and worked as a cashier and a baker at a supermarket from 1999 through 2000 and 2007 through 2011 (AR 37, 41, 201, 220). From approximately 2001 through 2006, she stayed home to care for her sick husband. (AR 37–38, 41, 201.)

Montgomery's physical and mental impairments caused her to gradually cut back her hours working in the bakery at a Shaw's supermarket until she eventually could no longer do the job and she stopped working on October 31, 2011. (AR 41–42, 213, 221.) Montgomery testified at the administrative hearing that she is unable to work because she has a bad back; she cannot sit or stand for very long; and she cannot walk far before having to rest. (AR 38.) She stated that she is "in constant pain all the time" (AR 42; *see also* AR 22 ("in constant pain")), and "the more [she] do[es], the more it hurts" (AR 42–43). Montgomery explained as follows in a January 2013 Function Report: "Between [f]ibromyalgia, [d]epression, [and] [d]egenerative [d]isc [d]isease[,] I am in constant pain. I can't stand very long [and] I can't sit very long." (AR 236.) She states that her only comfortable position is lying down. (AR 38, 229.) Medications, especially Lyrica, help with her pain, as does using a TENS unit. (AR 44–49.)

In addition, Montgomery testified that she cannot concentrate for more than 5–10 minutes; she is "constantly distracted" to the point where it is difficult to have a conversation; and she is "very snappy." (AR 43.) On a typical day, Montgomery sometimes showers (depending on how tired she is), goes on the computer, uses her

kindle, watches movies, knits, does some household chores (unloads the dishwasher and does a load of wash) and cleaning (with pain, and she needs to sit for 15–20 minutes after), lies down periodically, feeds and throws the ball for her dog, and occasionally does errands with her husband.  (AR 39, 230.)

In December 2012, Montgomery filed her application for disability insurance benefits.  (AR 92.)  Therein, she alleges that she stopped working on October 31, 2011 due to depression,[2] back pain, right knee pain, and hypothyroidism.  (AR 37, 213.)  Her application was denied initially and upon reconsideration, and she timely requested an administrative hearing.  On July 23, 2014, Administrative Law Judge (ALJ) Thomas Merrill conducted a hearing on the disability application.  (AR 32–61.)  Montgomery appeared and testified, and was represented by counsel.  A vocational expert also testified at the hearing.  On October 7, 2014, the ALJ issued a decision finding that Montgomery was not disabled under the Social Security Act from her alleged disability onset date through the date of the decision.  (AR 17–26.)  Thereafter, the Appeals Council denied Montgomery's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–3.)  Having exhausted her administrative remedies, Montgomery filed the Complaint in this action on May 10, 2016.  (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step

---

[2] Montgomery has not challenged the ALJ's findings regarding her mental impairments; therefore, only her physical impairments are addressed herein.

requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity" (SGA). 20 C.F.R. § 404.1520(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. § 404.1520(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her "past relevant work." 20 C.F.R. § 404.1520(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. § 404.1520(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Merrill first determined that Montgomery has engaged in SGA as an apartment rental agent since her alleged disability onset date of January 1, 2011, and thus "is not eligible for benefits." (AR 20.) The ALJ explained that Montgomery "testified that she received and recorded payments and also paid bills related to renting out three apartments that [she] and her husband own," and that "[m]edical records also indicated that [Montgomery] and her husband cleaned the apartments." (*Id.*) The ALJ continued: "[Montgomery] testified [that] she and her husband received about $4,200 in rental income from the apartments per month, although she said they were not always rented out." (*Id.*) Despite finding that Montgomery engaged in SGA during the alleged disability period, the ALJ made an "alternative analysis" (*id.*), stating: "the analysis will continue through Step 4 of the sequential evaluation process" (AR 19).

At step two, the ALJ found that Montgomery had the severe impairments of a spine disorder and fibromyalgia. (AR 20.) Conversely, the ALJ found that Montgomery's affective disorder was nonsevere. (AR 20–21.) At step three, the ALJ determined that none of Montgomery's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 21–22.) Next, the ALJ determined that Montgomery had the RFC to perform "the full range of light work," as defined in 20 C.F.R. § 404.1567(b). (AR 22.) Given this RFC, the ALJ found that Montgomery was capable of performing her past relevant work as a cashier and a bakery sales clerk. (AR 25–26.) The ALJ further noted that, with a full light work capacity, Montgomery "is deemed not disabled under Medical Vocational Rule 202.13–202.15." (AR 26.) The

ALJ concluded that Montgomery had not been under a disability from the alleged onset date of January 1, 2011 through the date of the decision. (*Id.*)

### Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the

determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

<u>Analysis</u>

Montgomery argues that the ALJ made the following errors in his decision denying disability: (1) finding that Montgomery engaged in SGA during the alleged disability period; (2) failing to consider if Montgomery had any 12-month period of disability prior to July 2013, when her back pain improved; (3) assessing Montgomery as only partially credible; and (4) giving little weight to the opinions of treating nurse practitioner (NP) Lucy VanHollebeke, RN, FNP. (*See* Doc. 10-1.) In response, the Commissioner asserts that, even if the ALJ erred in his step-one determination that Montgomery engaged in SGA, the error was harmless, and the remainder of the decision is supported by substantial evidence and complies with the applicable legal standards. (*See* Doc. 18.)

**I.      Substantial Gainful Activity (SGA)**

Montgomery's first argument is that the ALJ erred in finding that she engaged in SGA during the alleged disability period. (Doc. 10-1 at 6–9.) Specifically, Montgomery contends that the ALJ should not have counted her rental income from three apartments that she owned with her husband as earned income, because she performed few or none

of the duties of an apartment rental agent.  (*See* AR 265–69.)  According to Montgomery, it was her husband who regularly cleaned, showed, and rented out the apartments; and Montgomery herself only completed minimal paperwork, including making deposits and occasionally paying utility bills, and helped her husband clean the apartments for only about a five- or six-week period when she was feeling relief from her back pain.  (Doc. 10-1 at 8; *see* AR 39–40, 767.)  At the administrative hearing, Montgomery testified that she spent only 30 or 60 minutes each month doing paperwork related to the apartments. (AR 40–41.)

As noted above, at step one of the ALJ's five-step sequential process, the claimant bears the burden of proving that he or she did not engage in "substantial gainful activity," otherwise known as SGA, during the period in question.  *Butts*, 388 F.3d at 383.  If the claimant was able to engage in SGA during that period, the claim is rejected without consideration of the claimant's medical condition.  *See* 20 C.F.R. § 404.1571; 42 U.S.C. § 423(d)(1)(A); *DeRienzis v. Heckler*, 748 F.2d 352, 353 (2d Cir. 1984); *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245–47 (6th Cir. 1996).  "Substantial gainful activity" is "work activity that is both substantial and gainful."  20 C.F.R. § 404.1572.  Work is considered "substantial" if it "involves doing significant physical or mental activities," regardless of whether it "is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [he or she] worked before."  *Id.* § 404.1572(a).  Work activity is "gainful" if it is "the kind of work usually done for pay or profit, whether or not a profit is realized."  *Id.* § 404.1572(b).

In cases like this that involve a claimant who may have been self-employed, the ALJ considers the claimant's activities and their value to his or her business in deciding whether the claimant engaged in SGA during the alleged disability period. 20 C.F.R. § 404.1575(a)(2). The ALJ will not consider the claimant's income alone because the amount of income he or she actually receives may depend on "a number of different factors, such as capital investment and profit-sharing agreements." *Id.*; *see* SSR 83-34, 1983 WL 31256, at *1 (1983) ("Self-employment income alone is not a reliable factor in determining SGA, since it is influenced not only by the [claimant's] services but also by such things as market conditions, capital investments, the services of other people, and agreements on distribution of profits."). The ALJ determines whether a self-employed claimant has engaged in SGA by applying three tests:

> (i) Test [O]ne: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. . . .
>
> (ii) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>
> (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2). If the claimant has not engaged in SGA under Test One, the ALJ must consider whether he or she has engaged in SGA under Tests Two and Three. *Id.*

The ALJ failed to adequately assess whether Montgomery engaged in SGA during the relevant period under the applicable regulatory tests. The ALJ merely stated as follows:

> [Montgomery] testified that she received and recorded payments and also paid bills related to renting out three apartments that [she] and her husband own. Medical records also indicated she and her husband cleaned the apartments. [Montgomery] testified she and her husband received about $4,200 in rental income from the apartments per month, although she said they were not always rented out. . . . [She] has received such income from their rental property for the past 10 years. [Montgomery] has been able to engage in [SGA] as an apartment rental agent and is not eligible for benefits.

(AR 20.) As the Commissioner acknowledges, and as noted above, ALJs generally may not consider self-employment income alone to be a reliable factor in determining SGA because other variables often influence that income. (*See* Doc. 18 at 12 (citing 20 C.F.R. § 404.1575(a)(2); SSR 83-34, 1983 WL 31256, at *1).) The ALJ did not give sufficient consideration to Montgomery's testimony and other evidence indicating that she had very little involvement in her and her husband's apartment rental business. (*See, e.g.*, AR 40.)

Despite the ALJ's erroneous step-one SGA finding, because the ALJ made an "alternative analysis" of Montgomery's claim, considering the remaining steps of the sequential process and finding Montgomery disabled at step four (AR 20), remand is appropriate only if the ALJ's further analysis is either erroneous as a matter of law or not supported by substantial evidence, or if the ALJ relied heavily on his step-one SGA finding in assessing Montgomery's credibility or determining her RFC. *See, e.g.*, *Cantu v. Astrue*, No. CV–10–335–CI, 2012 WL 553141, at *4 (E.D. Wash., Feb. 21, 2012) (even if ALJ erred in finding plaintiff engaged in SGA at step one, error was harmless

because alternative findings at subsequent steps were properly supported); *Geister v. Astrue*, Civil No. 09–347–KI, 2010 WL 2867954, at *4 (D. Or. July 20, 2010) (ALJ error in determining plaintiff engaged in SGA was harmless because ALJ proceeded through other steps of sequential process "to be thorough"; ALJ did not solely rely on plaintiff's ability to engage in SGA in evaluating plaintiff's credibility and functional limitations; and substantial evidence supported ALJ's conclusion that plaintiff was not disabled during relevant period).

As pointed out by the Commissioner, the ALJ did not rely on his finding that Montgomery engaged in SGA throughout the rest of his analysis. Therefore, the ALJ's step-one error was harmless, and the Court must proceed to analyze the remainder of the ALJ's decision.

## II.     Medical Improvement since July 2013

Next, Montgomery argues that the ALJ erred by failing to determine if she was disabled for a 12-month period prior to July 2013, specifically from January 1, 2011 through "at least" July 2013, when she experienced medical improvement of her back pain due to her use of a TENS unit. (Doc. 10-1 at 13; *see id.* at 9–10.) Montgomery claims that the ALJ should have conducted a medical improvement analysis under 42 U.S.C. § 423(f) to determine whether she was still disabled after July 2013. This novel argument is that, because the ALJ found Montgomery could do only light work *after* she had medically improved in July 2013, he would have to find that she could do less than light work *before* that date, when her medical condition was worse. (*See* Doc 10-1 at 10

("If the ALJ considered that Ms. Montgomery's [RFC] was for 'light' after [her] improvement, then it stands to reason that [her] RFC was much reduced prior to that time."); *see also* Doc. 21 at 4–5.)

But the fact that Montgomery's medical condition improved as of July 2013 does not establish that she was unable to work prior to that date; it does not even necessarily show, in and of itself, that she could do less than light work (i.e., sedentary work or less) prior to that date. Moreover, because the ALJ did not find Montgomery disabled at any time, he was not obligated to conduct a "medical improvement" analysis under the applicable regulation. *See* 42 U.S.C. § 423(f)(1)(A); *Hathaway v. Berryhill*, No. 16-1500-CV, 2017 WL 1380549, at *1 (2d Cir. Apr. 18, 2017) (medical improvement analysis conducted only "*[a]fter a person has been found to be entitled to [social security] disability benefits*" (emphasis added)); *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984) ("the [Commissioner] must apply the medical improvement standard in deciding whether to terminate benefits *to an individual previously found to be disabled*" (emphasis added)). Furthermore, in determining Montgomery's RFC, the ALJ did in fact consider her condition during periods when her impairments were at their worse, including when she had treatment for her fibromyalgia and back pain, and an MRI identifying disc degeneration and herniation. (*See* AR 23–24.) For these reasons, the Court finds that the ALJ did not err in neglecting to include in his decision a finding regarding whether Montgomery was disabled for a 12-month period prior to her medical improvement in July 2013.

### III. Credibility Assessment

Next, Montgomery argues that the ALJ erred in finding her "statements concerning the intensity, persistence[,] and limiting effects of her symptoms" "not entirely credible." (Doc. 10-1 at 10; *see* AR 22, 25.) According to Montgomery, the ALJ should have found her credible because of her "candid statements of improvement with [a] TENS unit" and because the record "shows a longitudinal record of seeking medical treatment for pain, referral to specialists . . . , and trials of a variety of treatment modalities." (Doc. 10-1 at 11.) Moreover, Montgomery claims that the ALJ erred in "fail[ing] to state any specific item in the record or in his decision that supports [his] adverse credibility finding." (*Id.*) The Commissioner responds that the ALJ properly applied the relevant criteria to assess Montgomery's credibility, and that assessment is supported by substantial evidence. (Doc. 18 at 15–17.)

After conducting a thorough review of the record, the Court finds that the ALJ erred in failing to credit Montgomery's account of the severity of her impairments, particularly her back pain. If supported by objective medical evidence, a claimant's subjective evidence of pain is entitled to great weight. *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992). If, however, a claimant's subjective evidence of pain suggests a greater severity of impairment than can be demonstrated by objective evidence alone, the ALJ must consider other evidence, such as the claimant's daily activities, duration and frequency of pain, medication, and treatment. *See* 20 C.F.R. § 404.1529(c)(3). Here, in assessing Montgomery's credibility, the ALJ considered

Montgomery's daily activities, including caring for her pet, preparing simple meals, managing her own personal care, doing some housework, shopping for groceries with help, driving a car, knitting and embroidering, and watching movies and television. (AR 20.) The ALJ also considered that Montgomery "was noted to be doing well and requested a note allowing her to return to work" in April 2011, and that treating physician Dr. Jerry Tarver encouraged Montgomery to be active and found that her MRI results did not "correlate with her presentation." (AR 23.) The ALJ further considered the type and effectiveness of medication used by Montgomery, other treatment Montgomery received for her impairments, and that Montgomery stopped taking Vicodin and meloxicam in December 2011. (*Id.*)

Despite considering this evidence, the ALJ gave little attention to evidence supporting Montgomery's complaints of pain. For example, treating primary care physician Dr. Elizabeth Newman opined, based on her review of Montgomery's April 2012 MRI of her lower back, that "there is one disc in [the] spine that could be causing [Montgomery's] back pain [and] tingling/numbness." (AR 586.) And Dr. Tarver, a spine disorder specialist, diagnosed Montgomery with lumbar spondylosis and gave Montgomery a number of bilateral L5-S1 facet joint injections before concluding that they provided only short-term relief. (AR 559, 562, 564, 681, 687.) Additionally, Montgomery reported to a treating physical therapist that she had regular pain that increased with activity or weight-bearing positions and decreased when lying down. (AR 749.) Most importantly, as discussed below, NP VanHollebeke, Montgomery's treating

nurse practitioner during the relevant period, opined that Montgomery was severely limited in her ability to function and made no statements indicating that Montgomery was exaggerating her symptoms, failing to comply with treatment recommendations, or attempting to avoid work for reasons other than her pain and other impairments. (*See* AR 677 ("[d]ebilitating low back pain"), 709 ("taking hydrocodone 1–2 per day for past 1–2 mo[nths] for pain so can function"), 720–28, 733 ("cannot walk for 5 minutes without pain").)

Generally, the record shows a longitudinal record of Montgomery seeking medical treatment to address her pain, referral to specialists (a rheumatologist, a spine disorder specialist, and a physical therapist), and trials of several different treatment modalities including facet joint injections, physical therapy, use of a TENS unit, and different dosages and types of pain medication. (*See, e.g.*, AR 38, 44–48, 457, 562, 564–65, 586, 595, 599, 677, 681, 687, 709, 711, 741, 749, 774.) This record favors a positive credibility finding. The Social Security Administration explained:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

SSR 96-7P, 1996 WL 374186, at *7 (July 2, 1996).[3]  Moreover, Montgomery's testimony

at the administrative hearing regarding her daily activities reveals that they are quite

limited and certainly not exerting, as the ALJ suggests.  (*See* AR 38–39.)

If the ALJ's credibility findings are supported by substantial evidence, the court

must uphold the ALJ's decision to discount a claimant's subjective complaints.  *Aponte v.*

*Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citing

*McLaughlin v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 701, 704 (2d Cir. 1980)); *see*

*Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013).  But here, the ALJ's evaluation of

Montgomery's credibility does not properly account for the entire record, and thus is not

supported by substantial evidence.

---

[3] SSR 96-7p was superseded by SSR 16-3p, effective March 16, 2016.  *See* SSR 16-3p, 2016 WL 1119029, at *1 (2016).  SSR 16-3p eliminates the word "credibility" from the sub-regulatory policy because the regulations do not use the term.  *Id.*  The Seventh Circuit recently explained the change as follows:

> Recently the Social Security Administration announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms."  The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character[s]; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.

*Stoddard v. Berryhill*, CIVIL ACTION NO. 3:16-CV-1591, 2017 WL 930611, at *14 n.7 (M.D. Pa. Mar. 9, 2017) (citation omitted).  Substantively, SSR 16-3p's guidance concerning the evaluation of subjective symptoms in disability claims is largely consistent with the policies set out in SSR 96-7p regarding the assessment of the credibility of an individual's statements.  *Id.* (citing *Sponheimer v. Comm'r of Soc. Sec.*, Civil No. 15-4180 (RBK), 2016 WL 4743630, at *6 n.2 (D.N.J. Sept. 8, 2016)).  In any event, because the ALJ issued his decision prior to the effective date of SSR 16-3p, his obligation was to follow the guidance set out in SSR 96-7p, which was in effect on the date of his decision.  Therefore, the Court references the standards set out in SSR 96-7p here.

## IV.    Medical Opinions of NP Lucy VanHollebeke

Finally, Montgomery asserts that the ALJ erred in giving little weight to the opinions of treating nurse practitioner VanHollebeke regarding Montgomery's physical limitations.  (Doc. 10-1 at 13–15; *see* AR 24.)  NP VanHollebeke was Montgomery's primary treating source throughout the alleged disability period.  (*See* AR 474, 767.)  On February 4, 2013, she submitted a letter to the State of Vermont Disability Determination Services wherein she stated that Montgomery was applying for disability due to fibromyalgia and severe back pain.  (AR 676.)  NP VanHollebeke specified that Montgomery's back pain was limiting her ability to sit for more than 15–20 minutes, stand for more than 15 minutes, walk for more than 20 minutes, and lift more than approximately two pounds.  (*Id.*)  Several months later, in July 2013, NP VanHollebeke similarly opined in a Medical Source Statement of Ability to Do Work-Related Activities (Physical) (MSS) that Montgomery could sit for only 15–20 minutes, stand for only 15 minutes, and walk for only 20 minutes; and she was required to change positions every 15–20 minutes.  (AR 724.)  NP VanHollebeke further opined, again, that Montgomery could lift/carry no more than two pounds.  (AR 723.)

The ALJ gave little weight to NP VanHollebeke's opinions for three principal reasons: (1) they are inconsistent with NP VanHollebeke's own treatment notes; (2) they are "based on [Montgomery's] self-report and not supported by independent exam notes and observation by [NP VanHollebeke]"; and (3) they were made by a nurse practitioner rather than an "acceptable medical source" as defined in the regulations.  (AR 24.)

It is true that ALJs are not required to afford the same level of deference to the opinions of "other sources," including nurse practitioners, as they are to the opinions of "acceptable medical sources" like physicians and psychologists. *See* 20 C.F.R. §§ 404.1502, 404.1513(a), (d)[4]; SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). "[W]hile the ALJ is certainly free to consider the opinions of . . . 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008). Nonetheless, "other source" opinions are important, and ALJs are required to evaluate them in some depth. SSR 06-03p, 2006 WL 2329939, at *3 ("Opinions from these [other] sources, who are not technically deemed 'acceptable medical sources' under our rules, . . . should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."); *see Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir.1983) (stating opinion of nurse practitioner who treated claimant on regular basis entitled to "some extra consideration"). The Social Security Administration directs ALJs to use the same factors for the evaluation of "other source" opinions as are used to evaluate the opinions of "acceptable medical sources." SSR 06-03p, 2006 WL 2329939, at *4. These factors include the length of the treatment relationship, the frequency of evaluation, the degree to which the medical source provided evidentiary support for his or her opinions, the

---

[4] Effective March 27, 2017, 20 C.F.R. § 404.1513 has been amended, as have other regulations and SSRs cited herein (*see, e.g.*, 20 C.F.R. § 404.1527). Nonetheless, because Montgomery's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

opinions' consistency with the record as a whole, and any other relevant factors.  *Id.*; *see*
20 C.F.R. § 404.1527(c); *Evans v. Colvin*, 649 F. App'x 35, 38–39 (2d Cir. 2016).

Montgomery claims that the length and nature of NP VanHollebeke's treatment
relationship with Montgomery and the objective supportability of her opinions, provide
"strong support" for NP VanHollebeke's opinions.  (Doc. 10-1 at 14.)  In response, the
Commissioner states that the ALJ considered the relevant factors—including the nature
of the treatment relationship, whether NP VanHollebeke was a specialist, whether NP
VanHollebeke examined Montgomery, and whether NP VanHollebeke's opinions were
supported and consistent with the record—in determining the value of NP
VanHollebeke's opinions.  (Doc. 18 at 18; *see* AR 23–25.)  Although the ALJ did in fact
consider (or at least mention) these factors, he did not seem to place value on the most
relevant ones.  Specifically, he does not appear to have given value to the fact that NP
VanHollebeke was Montgomery's primary caregiver for many years, treating
Montgomery on a regular basis during the alleged disability period.  More importantly,
the ALJ's findings that NP VanHollebeke's opinions were inconsistent with her treatment
notes and based only on Montgomery's self-reporting are not supported by substantial
evidence.

In her June 2013 MSS, NP VanHollebeke stated that her opinions regarding
Montgomery's physical limitations were supported not solely by Montgomery's self-
reporting at appointments with her, but also by the April 2012 MRI that revealed
"bilateral foram[inal] narrowing [with] mass effect on [the] LS nerve roots," and by

"clinic notes" dated February 12, 2013 and earlier from the Vermont Interventional Spine Center. (AR 723; *see* AR 586, 677–79, 681–91.) The April 2012 MRI does indeed support NP VanHollebeke's opinions regarding Montgomery's physical limitations due to back pain, concluding as follows: "Disc degeneration at the L5-S1 level with facet posterior arthropathy and bilateral foraminal narrowing with possible mass effect on the L5 nerve roots." (AR 586.) As discussed in the section above regarding the ALJ's credibility assessment, treating physician Dr. Newman reviewed this MRI and found that "there is one disc in [the] spine that could be causing [Montgomery's] back pain [and] tingling/numbness." (*Id.*) Consistent with this evaluation, treating physician and back specialist Dr. Tarver diagnosed Montgomery with lumbar spondylosis and gave Montgomery a number of bilateral L5-S1 facet joint injections before concluding that they provided only short-term relief. (AR 559, 562, 564, 677, 681, 687.) NP VanHollebeke's treatment notes from the relevant period are also consistent with her opinions and with the MRI. (*See, e.g.*, AR 677 ("[d]ebilitating low back pain"), 709 ("taking hydrocodone 1–2 per day for past 1–2 mo[nths] for pain so can function"), 720–28, 733 ("cannot walk for 5 minutes without pain").)

Given this evidence, the Court finds that the ALJ's assessment that NP VanHollebeke's opinions are inconsistent with her own treatment notes and based solely on Montgomery's own self-report, are not supported by substantial evidence. Accordingly, the matter must be remanded for the ALJ to reanalyze NP VanHollebeke's opinions in light of the factors set forth in 20 C.F.R. § 404.1527(c).

**<u>Conclusion</u>**

As stated above, although the ALJ's step-one error regarding Montgomery's SGA was harmless and therefore not grounds for remand, remand is required due to the ALJ's improper analysis of NP VanHollebeke's opinions and unsupported assessment of Montgomery's credibility. Also, while on remand, the Court recommends that the ALJ explore a closed period of disability, ending in or after July 2013, when Montgomery's lower back pain improved due to her use of a TENS unit. (*See* Doc. 10-1 at 9 (Montgomery conceding that "[t]he record shows that [her] medical condition improved in July 2013").)

The Court thus GRANTS Montgomery's motion (Doc. 10), DENIES the Commissioner's motion (Doc. 18), and REMANDS the matter for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 18th day of May, 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge